# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6050 | **DATE** | 7/14/2000 |
| **CASE TITLE** | United States of America vs. Funds in the Amount of $122,500.00 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing is set for August 10, 2000 at 9:30 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Claimant's Motion to Dismiss [12] is denied. This case is set for status on Thursday, August 10, at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 17 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 90 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RJ | courtroom deputy's initials | JUL 17 2000 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,         )
                                  )
                    Plaintiff,    )
                                  )
          v.                      )    No. 99 C 6050
                                  )
FUNDS IN THE AMOUNT OF            )    Judge Joan B. Gottschall
$122,500.00,                      )
                                  )
                    Defendant.    )

DOCKETED
JUL 17 2000

## MEMORANDUM OPINION AND ORDER

The United States brought this forfeiture action pursuant to 21 U.S.C. § 881(a)(6) for the forfeiture of $122,500 seized from claimant Al Popova. The government alleges that it had a reasonable belief that the money was furnished, or was intended to be furnished, to facilitate narcotics trafficking. Popova has filed a motion to dismiss, arguing that there was no basis for the forfeiture action. For the reasons set forth below, the motion to dismiss is denied.

### Background

On April 22, 1996, Popova arrived at O'Hare International Airport on a flight from Macedonia, Yugoslavia. Pursuant to a routine inbound currency examination by customs agents, Popova was asked to declare any currency or monetary instruments of $10,000 or more as required under 31 U.S.C. § 5316. Popova declared $92,000 in U.S. currency, both verbally and on the customs form. After a search of Popova's luggage, the agents found approximately $124,097. The agents advised Popova of his Miranda rights and seized the funds pursuant to 31 U.S.C. § 5317(c). Popova waived his rights and agreed to be interviewed.

At the time of his interview, Popova stated that he was unemployed, but had worked as a cook and occasionally bought and sold gold jewelry at flea markets to generate income. He

stated that his average annual income was approximately $7,000. Popova lived in a two-bedroom apartment with his wife and two children. He told agents that his wife did not work or earn any income. His monthly rent was $600, which he paid through currency exchanges because he did not have a bank account.

Popova stated that he travels overseas approximately four times each year, although customs records indicate that he traveled from Europe – primarily Switzerland – to the United States approximately 18 times between February 1995 and April 1997. Popova explained that he was returning from visiting his mother in Serbia, and that a portion of the money he was carrying was proceeds from the sale of his mother's farm. He further explained that he spent three days in Zurich, Switzerland before departing for the U.S. While in Zurich, he obtained 70,000 Swiss francs from a safe deposit box. He provided the customs agents with a receipt for the box and explained that he owns the safe deposit box due to his frequent overseas travel. In searching Popova, the agents found business cards with telephone numbers for Rifat Fteja, the leader of a Yugoslavian drug trafficking operation. After the interview, the agents returned $1,597 to Popova and seized the remaining $122,500.

In November 1996, a DEA investigation revealed that Popova was involved in a Chicago-based Yugoslavian drug trafficking operation. Through a confidential informant, the DEA learned that Popova distributed kilogram quantities of heroin on behalf of Fteja. Fteja told the informant that Fteja provided heroin to his Chicago distributor, subsequently identified as Popova, on credit for $120,000 to $130,000 per kilogram. The informant observed Popova in Fteja's presence on several occasions. The informant told customs agents that on February 2, 1997, Fteja told the informant that he had successfully smuggled three kilograms of heroin

2

into the United States. Fteja told the informant that one kilogram was for his Chicago distributor.

Based on a review of toll records for Fteja's cellular phone, the DEA learned that Fteja telephoned Popova at his home. The DEA also learned that Swiss authorities identified and observed Popova in Zurich during February 1997 staying in a well-known hotel for drug couriers. Popova changed hotels three times during his one-week stay -- purportedly common behavior for drug traffickers. The Swiss authorities also intercepted a telephone conversation between Popova and Fteja. During this conversation, Popova inquired as to the whereabouts of Xhevat Sherifi, a courier for the Fteja organization who was subsequently convicted for cocaine possession.

In April 1997, a confidential source of information (SOI) that was previously part of Fteja's organization told a customs agent that Popova told the SOI that he had previously smuggled heroin and cocaine for Fteja's organization. The SOI also told the agent that in November 1996, he delivered a package of heroin to Popova in Switzerland. Upon the delivery, Popova told the SOI that the package was for Fteja's customer in Detroit. The SOI saw Popova slice open a tube of toothpaste and stuff the heroin into the tube, then board a flight from Zurich to Chicago with the heroin. The SOI also stated that on April 21, 1996 – the day before customs agents seized the money from Popova – the SOI carried $200,000 for Fteja's drug trafficking organization on a flight from Zurich to Chicago. Customs records reflect that Popova has traveled from Europe to the United States with both Fteja and the SOI on several occasions.

The DEA learned that Popova had been involved in narcotics trafficking dating back to

1988. On January 29, 1988, an informant obtained 24.2 grams of heroin as a free sample from Popova in Southfield, Michigan. At that time, Popova told the informant that he had access to two kilograms of heroin in Chicago and periodically brought heroin to the Detroit area. The DEA also learned that Popova was arrested by Chicago police in 1991 for possession of a controlled substance.

On September 14, 1999, the government filed a complaint for forfeiture pursuant to 21 U.S.C. 881(a)(6), alleging that the $122,500 seized from Popova was money furnished, or intended to be furnished, to facilitate narcotics trafficking. Popova has moved to dismiss, arguing that the complaint fails to show that probable cause exists for the forfeiture.

## Analysis

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not decide its merits. *Triad Associates Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). A complaint should not be dismissed unless it appears that the plaintiff cannot prove any facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

The forfeiture provision of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C § 881, sets forth a list of items subject to forfeiture, including:

> All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter . . . .

4

21 U.S.C. § 881(a)(6). Under this statute, the government has the initial burden of establishing that there is probable cause to believe that the property is subject to forfeiture. *United States v. All Assets and Equipment of West Side Building Corp.*, 58 F. 3d 1181, 1188 (7th Cir. 1995). Once the government meets its burden, the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture. *Id.* at 1189.

As a forfeiture complaint, the government's allegations must comply with the Supplemental Rules for Certain Admiralty and Maritime Claims. *See* 21 U.S.C. § 881(b). Supplemental Rule E(2)(a) requires the complaint to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *West Side Building Corp.*, 58 F. 3d at 1185 n.7. This standard requires more specificity than simple notice pleading, and is "meant to ensure that a forfeiture complaint apprises potential claimants of the circumstances which support the government's seizure of property." *United States v. Funds in the Amount of $9,800.00*, 952 F. Supp. 1254, 1259 (N.D. Ill. 1996). Because the complaint contains specific information about the date and location of the seizure, the amount of money seized, and the claimant's actions on the date of the seizure, Rule E(2)(a)'s particularity requirement is satisfied. *See United States v. Funds in the Amount of $29,266*, No. 99 C 7888, 2000 WL 558602, at *3 (N.D. Ill. May 8, 2000).

The other question is whether there is a reasonable basis to believe that the money is subject to forfeiture. "[O]n a motion to dismiss the government is not required to meet its ultimate trial burden of showing probable cause for forfeiture." *Funds in the Amount of $9,800*, 952 F.Supp. at 1260. Rather, the government's allegations need only set forth a reasonable

5

basis for believing that the property is subject to forfeiture. *Id.* In order to meet this burden, the "complaint must allege facts which reasonably support a nexus between the property seized and the related drug offense that is more than incidental or fortuitous." *Id.* The government is not required to trace the money to a particular drug transaction. *Id.*

Courts have not established clear guidelines to determine whether the government has alleged sufficient facts to provide a reasonable belief in support of a probable cause finding, opting instead for a case-by-case approach, looking at the totality of the circumstances. *Id.* at 1261. It bears noting that "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 451 (7th Cir. 1997). In establishing probable cause, the government may rely on direct, circumstantial and hearsay evidence. *Id.*

Courts have held that carrying a large amount of cash it is not enough, standing alone, to establish probable cause of illegal activity. *Funds in the Amount of 29,266*, 2000 WL 558602, at *4. However, carrying a large amount of cash becomes suspicious when it is known that the person does not have income that corresponds with such amounts. *Id.* Here the customs agent found $122,500 on Popova's person. Popova stated in his interview with the agents that he had an annual income of $7,000, he was recently unemployed, and his wife did not work. While Popova explained that a portion of the money came from the sale of his mother's farm, he also stated that some of the money came from his Swiss safe deposit box. Further, he initially lied about the amount he was carrying. He also stated that his monthly rent was $600, which means that his stated income was not even enough to pay his rent.

Popova challenges the complaint on the ground that many of the government's

allegations concern conduct occurring either after or well before the time of the initial seizure. However, probable cause for forfeiture is determined on the basis of information possessed by the government at the time of the forfeiture proceeding, not at the time of the initial seizure. *Funds in the Amount of $9,800*, 952 F. Supp. at 1260. At the time of the initial seizure, the government must only have probable cause to justify that seizure. *Id.* at 1263.

The facts alleged in the complaint establish a reasonable basis for the belief that forfeiture is justified. If proven, the government's allegations will establish a nexus between the seized money and illegal drug activity. As set forth above, the allegations suggest that Popova worked as a drug courier for Fteja, and that he was involved in drug trafficking before and after the time of the seizure. Coupled with the suspicious circumstances surrounding the seizure – that Popova failed to disclose the full amount of the currency, carried Fteja's phone numbers, and admitted to living expenses beyond his annual income – the allegations "tend to show probable cause for forfeiture." *Funds in the Amount of $29,266*, 2000 WL 558602, at *4.

## Conclusion

Because the allegations set forth in the government's complaint establish a reasonable basis for believing that Popova's funds were subject to forfeiture, Popova's motion to dismiss is denied.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 14, 2000